**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

MAE LEE                                                                                                PLAINTIFF

v.                                            4:07CV01171 SWW/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                                                    DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge Susan Webber Wright. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, Mae Lee, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB"), Widow's Insurance Benefits ("WIB"), and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs (docket entries #7 and #8), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1]

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged that she was limited in her ability to work by high blood pressure, a heart murmur, heart trouble, a knot in her side, and pain in her upper back and shoulders. (Tr. 30.) After conducting two administrative hearings, during which Plaintiff testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through May 10, 2007, the date of his decision. (Tr. 17.) On October 26, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #1.)

Plaintiff was 59 years old at the time of the first hearing. (Tr. 216.) She completed the eleventh grade and later obtained her General Equivalency Diploma. *Id.* She had additional vocational training as a medical assistant. *Id.* Her past relevant work included jobs as a life skills trainer and home health aide. (Tr. 250-53.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a

claimant's ability to perform basic work activities. *Id.* at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment.[2] *Id.*, §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC to perform past relevant work. *Id.*, §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date (Tr. 13); (2) had "severe" impairments, hypertension and scoliosis (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 15); (4) was not totally credible (*id.*); (5) retained the RFC for a full range of medium work (Tr. 16); and (6) was capable of performing her past relevant work. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In Plaintiff's Appeal Brief, she contends that the ALJ erred: (1) in determining she retained the RFC for a full range of medium work and could return to her past relevant work; (2) in failing to ask the vocational expert about any possible conflicts between his testimony and the DICTIONARY OF OCCUPATIONAL TITLES ("DOT"); and (3) in failing to find in accordance with the vocational expert's testimony. The Court will address each of these arguments separately.

First, Plaintiff contends that the ALJ erred in his RFC determination that she could perform a full range of medium work. (*Pltf's. App. Br.* at 8-15.) Plaintiff underwent a general physical examination in May of 2005. (Tr. 139-47.) Except for a slight limitation in her left shoulder, Plaintiff had a full range of motion in the spine and all extremities. (Tr. 142.) There was slight

---

[2] If the claimant does not meet or equal a Listing, then a residual functional capacity ("RFC") assessment is made. *Id.*, §§ 404.1520(a)(4); 416.920(a)(4). This RFC assessment is utilized at Steps 4 and 5. *Id.*

(4/5)[3] muscle weakness on the left, but otherwise there was no evidence of muscle weakness or atrophy, and no sensory abnormalities were noted; she was neurologically intact. (Tr. 143.) Gait and coordination were normal. *Id.* She could stand and walk without assistive device, walk on heels and toes, and squat and arise from a squatting position. *Id.* Circulation was normal. (Tr. 144.)

On December 18, 2006, Dr. Ted Honghiran, a consulting orthopaedic specialist, examined Plaintiff. (Tr. 168-71.) The results of this physical examination were as follows:

> The examination of this lady demonstrates she walks normally. She can walk on her toes and heels with no problems. The range of motion of her cervical spine shows she has full range of motion of the cervical and lumbosacral spine, with no muscle spasms and no severe pain on range of motion. The straight leg raises are negative on both sides and she has normal reflex and sensation in both arms and both legs.

(Tr. 168.)[4]

Dr. Honghiran also completed a Medical Assessment of Ability to do Work-Related Activities (Physical). (Tr. 171.) He checked boxes indicating that, in his opinion, Plaintiff could frequently lift and/or carry up to 20 pounds and occasionally up to 100; she could sit six hours in an eight-hour workday and walk/stand four hours. *Id.* This medical evidence directly supported the ALJ's determination that Plaintiff had the RFC to perform medium work.

Plaintiff's past jobs as a life skills trainer and home health aide required the ability to perform medium work. (Tr. 250, 252.) She left her last job, not because she could not perform the work, but because she had inappropriately handled a patient, which resulted in her being fired. (Tr. 218, 239.) In addition, she drew unemployment after leaving that job. (Tr. 218-19.) An application for unemployment compensation benefits adversely affects a claimant's credibility. *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991); *see also Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th

---

[3] One useful scale for grading muscle strength assigns 0 to no visible muscle contraction, 1 to trace movement, 2 to limb movement when gravity is eliminated, 3 to movement against gravity but not resistance, 4 to movement against resistance supplied by the examiner and 5 to normal strength. THE MERCK MANUAL 1751 (18th ed. 2006).

[4] These results seem to conflict with the range of motion chart Dr. Honghiran completed the same day, which showed Plaintiff had 60° of rotation of the cervical spine, rather than the normal rotation of 80°. (Tr. 170.)

Cir. 1994).  In Arkansas, an unemployed worker must be "physically and mentally able to perform suitable work, and [be] available for such work" in order to draw unemployment benefits.  A.C.A. § 11-10-507(3)(A) (2007).  This is clearly inconsistent with a claim of disability during the same period of time.  *Barrett, supra.*

Plaintiff had the burden of proving that she could not return to her past relevant work.  *E.g., Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2008).  She failed to meet that burden.  The ALJ's determination that she could return to her past relevant work was supported by substantial evidence.

Second, Plaintiff argues that the ALJ erred by not asking the vocational expert about any conflicts between his testimony and the DOT.  (*Pltf's. App. Br.* at 15-17.)  The following exchange took place between the ALJ and the vocational expert during the hearing:

> ALJ: Mr. Turner, I do need to remind you that any occupational evidence you provide should be consistent with the vocational information set out in the Dictionary of Occupational Titles.  When there's an apparent unresolved conflict between your testimony and the DOT you must be able to reasonably explain that conflict.  Are you prepared to do that?
>
> VE: Yes.

(Tr. 248-49.)  The vocational expert then proceeded to explain how his testimony was different in one regard from the DOT:

> VE: One thing I'm trying to determine here because the information I had didn't tell me, if she could just basically tell me what she did.  For instance, did she prescribe or give any medications at all?
>
> ALJ: As a life skills trainer?
>
> VE: Uh-huh.
>
> CLMT: No.
>
> ALJ: Tell us what you did, ma'am, in that job.
>
> CLMT: Bathe.  Give them exercises.  Took them through training skills of how to brush their teeth, comb their hair.  How to feed themselves.  How to stand.  How to walk.  How to identify objects.  It's whatever the paper requested that we train.
>
> VE: Okay.  I really think that's all I need.  I'll need to modify the DOT here

on that a little bit because she didn't come up to the skill level.

ALJ:  All right.  Tell me what her past relevant work was, please?

VE:  Okay.  This is a -- life skills trainer is a skilled job and it's listed as a medium work and I might have[,] should have asked her about the physical strength level too on that.  But anyway, it's listed as skilled and medium.  But from the things that she told me that would definitely not go above semiskilled and may even be unskilled if -- I think probably -- well, I'll tell you what.  I'm going to say very low SVP of 3 on semiskilled.  And could I ask her about the physical strength she --

ALJ:  Yeah.

VE:  The level.

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q  Ms. Lee, sometimes when you did your life skills training for youth and adults did you occasionally get into altercations with them?

A  When it come to the lifting parts sometime when we had to lift them they would fight.  They didn't want to be lifted.

Q  But I mean, would you lift them into bed or into wheelchairs or where?

A  Both.

Q  Both of those things?

A  Yes.

Q  Both adults and kids?

A  Right.

Q  And do you think that most days you would have to lift someone and assist them in --

A  Always.

Q  Always.

A  Always.

VE:  Okay -

BY ADMINISTRATIVE LAW JUDGE:

Q  Now, as far as your job with teaching them skills you indicated that in the morning when you came to work did you have a list of what skills to try to teach what person?

A  Yes.  I had an average of seven people to train in the morning.

Q  Okay.  And tell me again in as much detail as you can what you were to teach them to do? Could they -- most of these folks feed themselves?

A  Let's see.  Weren't no mentally handicapped people. Sometime they would have a new patient in there and you -- they would have a list.  Some of them couldn't feed themselves.  Some of them couldn't bathe.  Some of them couldn't brush their teeth.  Some of them couldn't brush their hair.  Some couldn't stand.

Q  Now, is that -- that's what you did at the Human Development Center --

A  Right.

Q   -- for how long?  How many years did you do that?

A  10 years and eight months.

Q  All right.  Is that what you did when you worked in Kansas too?

A  No, in Kansas I worked at -- which job are you referring to, the last one I worked on?  I worked with the elderly in a retirement center.

ALJ:  Okay.

EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q  Is that enough information, Mr. Turner?

A  Yes.  Your Honor.  A home -- for instance, a home attendant is SVP of 3, low semiskilled and medium work.  And what she's describing here is so closely related to that, so I'm going to say semiskilled and medium and not skilled.

Q  Now, wait a minute.  Now, you got me confused.

A  Okay.  It's listed as skilled and medium in the DOT.

Q  Right.

A   But to explain it I'm going to say semiskilled and the reason why is because the work that she does does not come up to the skill level --

Q  I understand that but I think -- I thought you said it was SVP 3.  Are you --

A  Yes.  SVP of 3.  That's low semiskilled.

Q  Right.  So, she -- the work she did at the Human Development Center --

A  Is --

Q  - - was performed at --

-7-

        A  Yes.

        Q  -- the medium and SVP 3?

        A  Yes, sir.  That's what I meant to say.

(Tr. 250-53.)

Thus, the vocational expert, in response to questions from the ALJ, explained the conflict between his testimony and the DOT.[5]  Furthermore, Plaintiff's attorney was present and briefly cross-examined the vocational expert. (Tr. 256.)  If clarification was needed about the vocational expert's testimony on this point, Plaintiff's attorney should have raised the issue on cross-examination so that it could be resolved, not wait to present the issue to this Court months later.  The failure to raise such an issue at the administrative level ordinarily prevents a party from raising it for the first time in a judicial appeal.  *Weikert v. Sullivan*, 977 F.2d 1249, 1254 (8th Cir. 1992); *accord, Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).

Furthermore, Plaintiff appears to have overlooked the fact that the ALJ did not rely on the testimony of the vocational expert, but reached a Step 4 decision that she could return to her past relevant work. (Tr. 16.)  Testimony of a vocational expert is not required at Step 4 of the sequential evaluation process; such testimony is only required at Step 5, when the burden shifts to the Commissioner, and claimant has a nonexertional impairment.  *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001); *Johnston v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994).

Finally, Plaintiff argues that the ALJ should have found her disabled based on vocational expert testimony that a hypothetical claimant could not return to Plaintiff's past relevant work. (*Pltf's. App. Br.* at 17.)  The ALJ asked the vocational expert to assume a hypothetical claimant that had an RFC limiting the claimant to light work. (Tr. 254-255.)  This precluded the hypothetical claimant from returning to Plaintiff's past relevant work, which was performed at the medium

---

[5]While the vocational expert could have given a more complete explanation of this conflict, the Court concludes that this does not rise to the level of reversible error.  *See Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (ALJ erred by not following SSR 00-4p, but error was harmless because there was no conflict).

exertional level. However, because the ALJ ultimately found that Plaintiff could perform a full range of medium work, and therefore return to her past relevant work, the vocational expert testimony on which the Plaintiff relies is irrelevant.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). Finally, the Court concludes that the Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed, and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 18th day of November, 2008.

_____
UNITED STATES MAGISTRATE JUDGE